148 N.J. Super. 566 (1977)
372 A.2d 1327
MICHAEL LA MANDRI, PLAINTIFF,
v.
ERNESTINE CARR, ELLA LINDSEY AND JUNE GIOVANNI, DEFENDANTS. JUNE GIOVANNI, PLAINTIFF-APPELLANT,
v.
ELLA J. LINDSEY AND ERNESTINE CARR, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 11, 1977.
Decided March 25, 1977.
*568 Before Judges MATTHEWS, SEIDMAN and HORN.
Mr. Alvin R. Leonard argued the cause for appellant June Giovanni.
Mr. Michael J. Cernigliaro argued the cause for respondents Ella J. Lindsey and Ernestine Carr. (Messrs. Campbell, Foley, Lee, Murphy & Cernigliaro, attorneys; Mr. Frank J. Kunzier on the brief).
No brief was filed on behalf of plaintiff Michael La Mandri.
The opinion of the court was delivered by SEIDMAN, J.A.D.
On June 22, 1972, at about 1:35 P.M., an automobile operated by June Giovanni collided with another owned by Ella J. Lindsey and operated by Ernestine Carr. Both vehicles had been proceeding in a southerly direction on the Garden State Parkway in New Shrewsbury, Monmouth County. Michael La Mandri, a passenger in the Giovanni automobile, filed a negligence action against Miss Giovanni and the owner and operator of the other vehicle to recover damages for his personal injuries. Miss Giovanni also brought suit against the latter, claiming injuries and property damage. The actions were consolidated. Miss Giovanni will be referred to hereafter as plaintiff; Miss Carr, as defendant.
At the trial, because his medical witness was unavailable, La Mandri agreed to be bound as to liability by the outcome *569 thereof, reserving for a later date the admeasurement of his damages. Negligence on the part of defendant was conceded, so that the trial proceeded only on the issues of plaintiff's negligence and damages. The complaint was dismissed as to Mrs. Lindsey. The jury returned a verdict in favor of defendant upon a finding that plaintiff was contributorily negligent, and judgment was entered accordingly.
Plaintiff appeals, contending that (1) the trial judge erroneously instructed the jury that a violation of N.J.S.A. 39:4-89 was negligence; (2) the verdict was against the weight of evidence; (3) she should have been permitted to testify about her property damage claim; (4) the issue of contributory negligence should not have been submitted to the jury; (5) there was a question whether contributory negligence was a substantial factor in causing the accident; (6) defendant should not have been allowed to object to certain testimony of the police officer, and (7) plaintiff's physician should have been permitted to render his opinion as to the permanency of her injuries.
On the issue of plaintiff's contributory negligence, the trial judge instructed the jury to consider whether she had been guilty of a violation of N.J.S.A. 39:4-89, i.e., whether at the time of the accident she was following "another vehicle more closely than is reasonable and prudent, having due regard to the speed of the preceding vehicle and the traffic upon, and condition of, the highway." He further charged, in accordance with Dolson v. Anastasia, 55 N.J. 2 (1969), that a violation of the statute was negligence and not merely evidence thereof.
It is not in dispute that on the day in question both cars were proceeding south on the Garden State Parkway. It was raining and the roadway was wet. According to plaintiff's version of the accident, substantially corroborated by her passenger, as she was travelling in the right-hand lane at a speed of about 40 miles an hour defendant's car passed her on the left. Its speed was estimated to be 60 to 65 miles an hour. When defendant's car was approximately *570 100 yards ahead it suddenly "lost control and was spinning around." It spun "both to the right, to the left, toward the center." Plaintiff steered to her left to get out of the way. She was "partially on the shoulder and the left lane and I stopped because I was afraid to go over that shoulder." The other car, she said, "came north up the Parkway" and in the course of its last spin, its rear struck the front of plaintiff's automobile.
Defendant's explanation was that after overtaking plaintiff's automobile she saw a puddle of water and applied her brakes. The car slid into the "opposite lane." She said further:
* * * I just was trying to get the car under control right and then in the meantime I looked through the window to see were any cars in back of me and there were and it was a truck also coming down the street and at that time after I got the car almost under control and to a stop, the defendant came behind me and she hit me in the rear.
The impact, she added, took place between the fast and the middle lanes. On cross-examination she said that when she first saw plaintiff's car it was two to three car lengths away, because "I had passed her." When the skid occurred, she said, her speed was between 55 and 60 miles an hour. She denied spinning around or moving in a northerly direction during the course of the skid.
The investigating state trooper testified to what both drivers told him at the scene. Defendant, he related, said that she was going south in the right lane at about 55-60 miles an hour when her car started to slide; she took her foot off the gas and applied her brakes; and the car skidded to the left, then to the right, spun around and went to the left, where she was hit. Plaintiff told him that she was "[t]ravelling in the right lane about 100 yards to the rear of vehicle Number 1 when she [Carr] started to skid. I did what I could to avoid the car, but she was sliding back and forth and spinning around until she hit me."
*571 N.J.S.A. 39:4-89 provides in pertinent part that
[t]he driver of a vehicle shall not follow another vehicle more closely than in reasonable and prudent, having due regard to the speed of the preceding vehicle and the traffic upon, and condition of, the highway.
This kind of driving is commonly referred to as "tailgating." Mitchell v. State, 43 Ala. App. 427, 191 So.2d 385, 391 (Ct. App. 1966); Webster's Third International Dictionary (1966). In Dolson v. Anastasia, supra, the court said:
It is elementary that a following car in the same lane of traffic is obligated to maintain a reasonably safe distance behind the car ahead, having due regard to the speed of the preceding vehicle and the traffic upon and condition of the highway. Stackenwalt v. Washburn, 42 N.J. 15, 30 (1964). Failure to do so resulting in a collision is negligence and a jury should be so instructed. N.J.S.A. 39:4-89 * * * merely incorporates the common law standard into the motor vehicles law to authorize penal sanctions for a violation. [55 N.J. at 10]
Plaintiff argues that the accident did not occur as a result of her following defendant too closely in the same lane, but rather occurred after defendant "cut in front of her in her lane of traffic, lost control of her vehicle, spun around and was involved in a collision with the plaintiff's vehicle in a different lane of traffic where the plaintiff had moved as a result of taking evasive action to avoid being involved in a collision with the defendant's vehicle which was admittedly out of control." Defendant, on the other hand, relies on Dolson, maintaining that on the facts it was for the jury to decide whether there was a violation of "the tailgating statute."
We think that the section of the Motor Vehicle Law in controversy was not intended to apply indiscriminately to any case in which the front of one vehicle comes into contact with the rear of another, irrespective of how the collision occurred. Thus, in Dolson there was evidence that *572 as plaintiff's car was slowing down preparatory to making a left turn at an intersection, defendant's oncoming vehicle encountered a slippery spot in the roadway and slid into the rear of the other one. In Stackenwalt v. Washburn, 42 N.J. 15 (1964), involving a chain collision during a dense fog on the New Jersey Turnpike, defendant's car ran into the rear of another which had slowed down because of the fog. And in Bailey v. Branin, 279 F.2d 344 (3 Cir.1966), the statute was held applicable to a rear-end hit which occurred while both cars involved were proceeding in the same direction and in the same lane. Although there is some uncertainty whether both colliding automobiles need be in motion at the time of the collision, or whether the lead vehicle may be stopped,[1] it seems clear that the essence of the asserted negligence, to justify involving the statute, must be a motorist's alleged failure to maintain a reasonably safe distance behind another vehicle in the same lane of traffic.
Here, while the two automobiles had originally been proceeding in the same lane, there was no evidence of any "tailgating" by plaintiff prior to defendant's loss of control, or of any causal relationship between such "tailgating," if there was any, and the skidding of defendant's vehicle. Moreover, even if the jury believed that her car slid from the right lane to a point midway between the center and fast lanes, without spinning around, and was stopped when struck in the rear by plaintiff's car, it would still be evident that the impact occurred in the course of evasive action taken by plaintiff, and not as the result of following too closely in the same lane. We are satisfied that N.J.S.A. 39:4-89 was not applicable on the facts here present, and that the instruction concerning it should not have been *573 given. Moich v. Passaic Terminal & Transp. Co., Inc., 82 N.J. Super. 353, 370 (App. Div. 1964).
We have no doubt that the proofs presented a jury issue as to whether plaintiff used reasonable care and caution for her own safety in the control, management and operation of her automobile, and whether she exercised such judgment to avoid a collision with defendant's vehicle as a reasonably prudent person would have done in the existing circumstances. That issue was submitted to the jury with appropriate instructions. But the challenged instruction had the capacity to mislead the jury into the belief that plaintiff's negligence consisted of following the other vehicle too closely, in violation of N.J.S.A. 39:4-89, thereby causing the collision, and thus was erroneous. Cf. Capaldo v. Reimer, 40 N.J. 269, 275 (1963). The error was further compounded by the trial judge's comment that
* * * This statute will apply, and what I will add in addition to what the statute says, if you accept the story of Ernestine Carr that she was in fact run into in either the middle lane, as I recall the testimony, or between the fast lane and the middle lane, I think this might be close to what she said * * *
thus instructing the jury, in effect, that this was enough to invoke the statute.
We are convinced that the charge in question may well have been the determinative reason for the jury's adverse verdict, so that the error was clearly prejudicial. Cf. Clemens v. O'Brien, 85 N.J. Super. 404, 411 (App. Div. 1964).
Since we conclude that the judgment must be reversed, we need not consider the other grounds of appeal asserted by plaintiff.
Reversed and remanded for a new trial.
NOTES
[1] Cf. Mockler v. Russman, 102 N.J. Super. 582, 590 (App. Div. 1968), certif. den. 53 N.J. 270 (1969), in which the statute was declared to be inapplicable to a rear-end collision involving a bus and a passenger car while the latter was stopped preparatory to making a left turn, for the reason that "it pertains to a situation where both vehicles involved in a accident are in motion upon the highway."